TUCKER, Judge.
The City of Baton Rouge and the Parish of East Baton Rouge having failed to negotiate a sale with the owners of the land in question filed proceedings against Consolidated Management Company, an ordinary partnership organized under the laws of Louisiana, and its partners, Carol Ball-ridge, Wendell W. Wells, George E. Mc-Nutt, Jr., J. Clifford Ourso, Sr., and Rolfe H. McCollister, to expropriate the land sought for the purpose of a mass transportation garage and administration buildings. The land which is the subject of this suit is described as:
“A certain tract or parcel of land, located in the City of Baton Rouge, Louisiana, in the Parish of East Baton Rouge, Louisiana, in the area commonly known as- Standard Heights Subdivision, and known as the Standard Heights School-site being rectangular in shape, and containing approximately 3.21 acres, more *491 or less, and being more particularly described as follows:
Commence at a point which is at the intersection of the easterly right of way line of Larkspur Avenue (formerly Maple Street), and the northerly right of way line of Seneca Street (formerly ‘A’ Street), said point being the southwest corner of the tract herein being described, and being the point of beginning, thence easterly a distance of 254 feet along the north right of way line of Seneca Street to a point and corner; thence northerly at right angle a distance of 550 feet along the westerly right of way line of Phlox Avenue (formerly Hickory Street) to a point and corner; thence westerly at right angle a distance of 254 feet along the south right of way line of Chippewa Street (formerly ‘B’ street) a distance of 254 feet to a point and corner; “thence Southerly at a right angle a distance of 550 feet along the east right of way line of Larkspur Avenue to the point of beginning, to form a closed figure containing 3.21 acres, more or less, all as shown on a map drawn by Edward E. Evans & Associates, Inc., C.E., dated November, 1964, and entitled ‘Compiled Map Showing 3.21 + or ~~ Acre Tract for East Baton Rouge Parish School Board’ which is recorded with and attached to an act of cash sale recorded as Original 75, Bundle 6210 of the official records of East Baton Rouge Parish, La.”
After suit was filed a stipulation was entered into between plaintiffs and defendants which provided that the plaintiffs would deposit Ninety Thousand, eight hundred five and no/100 ($90,805.00) Dollars into the registry of court and take title to above-described property, reserving to judicial determination whether or not any additional monetary consideration be due defendants. The defendants were claiming that One Hundred Fifty Thousand ($150,000.00) Dollars was the true market value of the tract of land in question. The sole issue before the trial court was the value of the land.
The trial judge subsequently found that the amount deposited in the registry of court or Ninety Thousand Eight Hundred Five and no/100 ($90,805.00) Dollars, was the proper market value of the “Standard Heights Tract.”
From this judgment the defendants have appealed alleging error by the trial judge in not considering the testimony of their two expert witnesses, without a finding that their testimony was not sincere or not based upon sound reasoning. Defendant-appellants allege error, also, in the trial judge’s relying exclusively upon the appraisal of one expert when he himself, by his own statement, was convinced of a valuation higher than the award given.
Plaintiffs’ first expert appraiser, J. Clifford Doiron, used seven comparable sales, all in the vicinity of the subject property, and some of which sales were of the subject property itself. At the time of the first sale of the property by the school board in 1966 it was zoned A-3 residential. Subsequently the property was rezoned M-l. In a transitional stage the property is rapidly commercial and industrial. When the School Board sold the property initially, it did so by advertisement and bids. Not being satisfied with the first bids, it re-advertised the property and finally sold it to the Royal American Insurance Company, a predecessor in title to the present owners, who ultimately purchased it for $76,400.00 in 1968. Since the date of the purchase of the subject property by defendants they have had the property up for sale and in three years’ time have not sold it. Apparently using the sale of the property itself as the most important “comparable”, Mr. Doiron concluded that the tract should be valued at $23,100.00 per acre, or 49‡ per square foot, or a total of $75,600.-00, for the land and including the fence surrounding it in the sum of $1500.00. None of the appraisers, incidentally, as *492 signed any value to the buildings already upon the tract of land.
Plaintiffs’ second appraiser, H. Loren Willet studied all of the sales used as com-parables by all of the expert witnesses, testifying both for the plaintiffs and for the defendants. He relied upon a series of sales in the vicinity as follows :
“Other purchases by Gonzales were the series of lots on the south side of block 57 being a series of lots along Choctaw that were — are now zoned C-l and C-2, that have been primarily removed of any improvements. The improvements have been removed for further plottage for his warehousing facilities. One of these was the purchase from William J. Gau-treau and others, September 9, 1969, Original 30, Bundle 7141, Six Thousand Five Hundred Dollars, cash sale, lot 21, square 57. This was forty front feet on the noth (sic) side of Choctaw by a hundred thirty two point four feet, zoned C-2. That was a Dollar twenty three cents per square foot. Another purchase from Fidelity National Bank of Baton Rouge and Mary Champagne to Gonzles Realty, Inc., November 8, 1968, Original 11, Bundle 6907, Fifteen Thousand Seven Hundred Fifty Dollars, being lots 2, 3 and 22, all of them on the north side of Choctaw Drive, forty front feet each by a hundred thirty two point four feet in depth, and an indicated unit value of ninety nine cents per square foot. This purchaser, Gonzales Realty, Inc. has been one of the most active in this area. The Properties he was acquiring were bounded on the east by A-3, very similar to the subject, being bounded on the west across Larkspur by A-3 zoning, single family residential, basically the same neighborhood characteristics as in the vicinity of the Gonzales acquisitions. The Jack’s Cookies acquisition from Eleven Hundred Land Company in April— recorded April 1, 1970, was forty-nine cents per square foot. It was zoned M-3 industrial, whereas subject is M-l. In my opinion subject would be superior to that acquisition by Jack’s Cookies Corporation, because of its frontage on all four sides and more uniform shape. The comparable did have rail spur frontage and frontage on North Third Street, but subject was more level and in my opinion superior. Another sale observed was a sale from North Baton Rouge Development Company in the warehouse district south of Choctaw and south of Landa Drive that were in the M-3 that were in the warehousing area and most of those tracts were selling at a Dollar per square foot. The Manda Brothers Provision Company purchase, May 15, 1969, Original 27, Bundle 7105, for Forty Thousand Dollars was at a Dollar per square foot. Then in February 10, 1970, Manda Brothers Provision Company purchased another one hundred front feet by two hundred feet, an interior lot, zoned M-3 with railroad spur frontage on its rear at a Dollar per square foot for the twenty thousand square feet. Those in my opinion tended to set the upper indication of value for the subject tract. So from these sales it was my conclusion that subject would have an indicated value of in my conclusion sixty-five cents per square foot, applied to the one hundred thirty nine thousand seven hundred square feet or market value of Ninety Thousand Eight Hundred Five Dollars.” (Emphasis added)
On the other hand neither John Lejeune nor Kermit Williams, defendants’ appraisers, used any of the previous sales of the subject property as a comparable. Instead they both used as comparables much smaller tracts of land in the vicinity which naturally tends to result in a larger per unit price. Defendants’ appraisers attempted to justify the use of smaller tracts of land as comparables by stating that the landowners in the instant case could have subdivided their tract into smaller tracts. The fact remains, however, that the present owners *493 did not subdivide their tract and never advertised it for sale in any way except as a unit, which fact suggests the impropriety of defendants’ appraisers’ comparables. Mr. Lejeune determined the market value of the subject tract to be $140,000.00, or $1.00 per square foot. Mr. Williams determined the value of the property at $144,000.00 or $1.03 per square foot, almost twice what the property sold for five years earlier.
When asked to account for having given an appraisal almost double that which he made for the school board in 1964, Lejeune attributed the increase in value to the change of zoning from A-3 to M-l, a stimulated interest in the area for industrial and commercial purposes, and also to the fact that Chippewa Street, on which it fronts on one side, had been changed from two to four lanes and now had a substantial traffic flow. Doiron, testifying for the plaintiffs, had said, on the other hand, that he did not believe that the general economic conditions in the Baton Rouge area in the past four years had been such that industrial, or M-l property, like the subject property had realized an increase in value.
The trial judge obviously relied upon the appraisal of the expert Mr. Willet, although he discussed all of the appraisals made by the other experts in his reasons for judgment, rejecting defendants’ appraisers because he did not believe their appraisals to be grounded upon sound reasoning. The trial judge, rather than relying on his own personal opinion of the value of the property, correctly accepted the appraisal of the expert whose judgment he considered to be the soundest. This court can find no manifest error in the judgment of the trial judge.
For the foregoing reasons the judgment of the lower court is affirmed at the costs of the appellants.
Affirmed.